**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION**

| | |
|---|---|
| Auto Owners Insurance Company, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Travis Azure, Ken LaDot Davis and )<br>Jeremy Laducer, Jointly & Severally, )<br>)<br>Defendants. ) | **ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS**<br><br>Case No. 2:08-cv-117 |

Before the Court is a motion to dismiss filed by Defendants Ken Davis and Jeremy Laducer on November 13, 2009. See Docket No. 19. The Plaintiff filed a response in opposition to the motion on November 25, 2009. See Docket No. 21. The Defendants filed a reply brief on December 3, 2009. See Docket No. 24. For the reasons set forth below, the Court grants the motion to dismiss.

**I.     BACKGROUND**

Defendants Ken Davis and Travis Azure lived next door to each other on the Turtle Mountain Reservation. Each is an enrolled member of the Turtle Mountain Band of Chippewa, along with Defendant Jeremy Laducer, who is Davis's son-in-law. In early 2008, a dispute arose between Davis and Azure regarding a sewage clean-out pipe. The pipe originated at Azure's house and was routed outside between the two houses, coming to an end near Davis's yard. After the pipe began leaking sewage onto Davis's yard, Davis and Laducer allegedly trespassed onto Azure's land and intentionally blocked the pipe by pouring concrete into the sewer clean out. The blockage caused sewage to back up into Azure's basement, resulting in damage to his property.

After these events transpired, Azure filed a civil action against Davis and Laducer in Turtle Mountain Tribal Court which remains pending. On November 21, 2008, the plaintiff, Auto Owners Insurance Company, filed a complaint in federal court seeking a declaratory judgment regarding the rights of the parties. Auto Owners issued a homeowner's insurance policy to Davis which was in effect at the time of the dispute. The complaint alleges that the insurance policy does not require Auto Owners to indemnify Davis for any damages claimed by Azure because the policy does not cover intentional acts. Davis and Laducer filed the present motion on November 13, 2009, asserting that Auto Owners failed to exhaust Turtle Mountain Tribal Court remedies before seeking relief in federal court.

## II.   LEGAL DISCUSSION

Davis and Laducer seek dismissal based on the Court's discretion under the Declaratory Judgment Act and the principles embodied in the tribal exhaustion doctrine. The motion is predicated upon Rule 12(b) of the Federal Rules of Civil Procedure.

### A.   DECLARATORY JUDGMENT ACT

The Plaintiff seeks relief under the Declaratory Judgment Act codified at 28 U.S.C. § 2201. Under the Act, district courts may determine the rights and legal relations of interested parties. 28 U.S.C. § 2201(a). The Act "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Roark v. South Iron R-1 Sch. Dist., 573 F.3d 556, 561-62 (8th Cir. 2009) (citing Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)). As stated by the United States Supreme Court, "By the Declaratory Judgment Act, Congress sought to place

a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). Ultimately, whether a district court grants relief in a particular case "will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." Id. at 287.

In this case, any inclination on the Court's behalf to exercise its discretion under the Declaratory Judgment Act yields to the applicability of the tribal exhaustion doctrine. Malaterre v. Amerind Risk Mgmt, 373 F. Supp. 2d 980, 982 (D. N. D. 2005) (citing Gaming World Int'l, Ltd. v. White Earth Band of Chippewa, 317 F.3d 840, 849 (8th Cir. 2003)). In Gaming World, the Eighth Circuit Court of Appeals held that the tribal exhaustion issue "is a threshold one because it determines the appropriate forum." Gaming World, 317 F.3d at 849. Therefore, the Court will analyze the applicability of the tribal exhaustion doctrine.

### B.  TRIBAL EXHAUSTION DOCTRINE

Under the tribal exhaustion doctrine, principles of comity require a federal court to stay an action until the parties exhaust the available remedies in tribal court. "[W]hen a colorable claim of tribal court jurisdiction has been asserted, a federal court may (and ordinarily should) give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims." Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 31 (1st Cir. 2000). The doctrine "is based on a policy of supporting tribal self-government and self-determination." Id. (citing Nat'l Farmers Union Ins. Co.

v. Crow Tribe of Indians, 471 U.S. 845, 856 (1985)).  While the doctrine is prudential, rather than jurisdictional, "[e]xhaustion is mandatory . . . when a case fits within the policy."  Id.

Auto Owners contends this case does not fit within the parameters of the tribal exhaustion doctrine because the tribe does not maintain jurisdiction over non-members.  As a general rule, in civil cases, "'[T]he inherent sovereign powers of an Indian tribe' – those powers a tribe enjoys apart from express provision by treaty or statute - 'do not extend to the activities of nonmembers of the tribe.'"  Strate v. A-1 Contractors, 520 U.S. 438, 445-46 (1997) (quoting Montana v. United States, 450 U.S. 544, 565 (1981)).  However, the Supreme Court in Montana provided two exceptions to this general rule:

> Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands.  A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.  A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

Montana, 450 U.S. at 565-66 (citations omitted).  The Supreme Court further explained the *Montana* framework in Strate:

> Montana thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions:  The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare.

Strate, 520 U.S. at 446.

In this case, there does not appear to be any dispute that the second exception regarding the tribe's right to self-government does not apply because this is a private suit that does not impact the

tribe's political integrity, economic security, health, or welfare. The parties disagree as to whether the first *Montana* exception applies regarding consensual relationships. According to Auto Owners, the Supreme Court expressly limited the scope of this exception in Nevada v. Hicks, 533 U.S. 353 (2001), to those cases which are "connected to the right of the Indians to make their own laws and be governed by them." MacArthur v. San Juan County, 497 F.3d 1057, 1075 (10th Cir. 2007). Auto Owners contends that the facts of this case do not affect the tribe's right to make its own laws and be governed by such laws.

In MacArthur, the plaintiffs, including some enrolled tribal members, brought suit against several defendants asserting claims arising out of their employment with the San Juan County Health District, a political subdivision of the State of Utah. The Tenth Circuit Court of Appeals began its analysis under Montana by applying the general rule "that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." Id. at 1070 (citing Montana, 450 U.S. at 565). In applying the first *Montana* exception, the court found that the employment relationship between the parties qualified as a consensual relationship, but noted that the consensual relationship was unique because it involved a political subdivision of the State of Utah and it was entered into pursuant to an exercise of police power on non-Indian land. Id. at 1071, 1072. The court limited the regulatory authority of the tribe based on consensual employment relationships to only those relationships where a non-member employs a member of the tribe within the physical confines of the reservation. Id. at 1071-72. Even though a consensual relationship existed between the parties, the court noted that *Montana*'s consensual relationship exception dealt exclusively with

5

private conduct, and found non-private consensual relationships distinguishable based on the Supreme Court's holding in Hicks[1]:

> We too adhere to the distinction between private individuals or entities who voluntarily submit themselves to trial jurisdiction and "States or state officers acting in their governmental capacity." The power to exercise regulatory authority over another independent sovereign on that sovereign's land, even where a consensual relationship is involved, closely resembles the "freedom independently to determine their external relations," which the tribes necessarily relinquished as a result of their dependent status. Thus, we hold, in the absence of congressional delegation, the tribes may not regulate a State qua State on non-Indian land (even within the exterior boundaries of the reservation) based on a consensual relationship between the members of the tribe and the State.

Id. at 1073-74 (internal citations omitted).

Contrary to the assertion of Auto Owners, MacArthur did not limit the first exception to only those cases that involve "the right of the Indians to make their own laws and be governed by them." Id. at 1075. The court's discussion of this limitation under Hicks applied to the second exception regarding the tribe's right to self-government, not the first exception regarding consensual relationships. The only limitation placed on the first *Montana* exception related to where the employment relationship took place and whether a governmental entity was involved.

---

[1] In Nevada v. Hicks, 533 U.S. 353, 372 (2001), the United States Supreme Court explained the reach of Montana:

> The [Montana] Court . . . obviously did not have in mind States or state officers acting in their governmental capacity; it was referring to private individuals who voluntarily submitted themselves to tribal regulatory jurisdiction by the arrangements that they (or their employers) entered into. This is confirmed by the fact that all four of the cases in the immediately following citation involved private commercial actors. See [Washington v. Confederated Tribes of Colville Indian Reservation, 447 U.S. 134, 152 (1980)] (nonmember purchasers of cigarettes from tribal outlet); [Williams v. Lee, 358 U.S. 217, 217 (1959)] (general store on the Navajo reservation); Morris v. Hitchcock, 194 U.S. 384 (1904) (ranchers grazing livestock and horses on Indian lands "under contracts with individual members of said tribes"); Buster v. Wright, 135 F. 947, 950 (8th Cir. 1905) (challenge to the "permit tax" charged by a tribe to nonmembers for "the privilege . . . of trading within the borders").

In this case, unlike MacArthur, the dispute does not involve any governmental entities. Auto Owners concedes this is a private dispute between an insurer and its insured. Although the parties do not maintain an employment relationship like the parties in MacArthur, the relationship between an insurer and insured has repeatedly been held to constitute a consensual relationship under the first *Montana* exception. Malaterre, 373 F. Supp. 2d at 985 ("While [the insurer] is a non-member which limits tribal court jurisdiction, the case seems to fall squarely within the first Montana exception as [the insurer] entered into a contract with the tribe."); see also Allstate Indem. Co. v. Stump, 191 F.3d 1071, 1074-75 (9th Cir. 1999).

In Malaterre, this Court considered the application of the tribal exhaustion doctrine under facts similar to the present case. A complaint was filed in tribal court against the defendants and their insurer after the plaintiffs were killed or injured in a house fire. Malaterre, 373 F. Supp. 2d at 981. While that claim was pending, a separate declaratory judgment action was filed in federal district court concerning the issue of whether coverage existed under the insurance policy. The Court held that the tribal exhaustion doctrine applied and the case fell within the first *Montana* exception. Id. at 985.

The Court based its holding, in part, on the analysis of an earlier case decided in the District of North Dakota. See Progressive Northwestern Insurance Co. v. Nielson, 2002 WL 417402 (D.N.D. Jan. 8, 2002). In that case, an automobile accident also generated two lawsuits: (1) a negligence action in tribal court; and (2) a declaratory judgment action in federal court by the insurance carrier against the tribal members involved in the accident. Nielson, 2002 WL 417402, at *1. Judge Rodney Webb found that a colorable claim of tribal court jurisdiction existed under Montana and required tribal court exhaustion. Id. at *5.

The Court finds the legal analysis and reasoning as set forth in <u>Malaterre</u> and <u>Nielson</u> is instructive.  Auto Owners clearly had a consensual relationship with defendant Ken Davis when it issued a homeowner's insurance policy to him.  As a result, the first *Montana* exception applies and the tribal court retains jurisdiction over the conduct of Auto Owners.  The Court further finds that <u>Strate v. A-1 Contractors</u> does not prevent tribal court exhaustion because in this dispute there is a colorable claim of tribal court jurisdiction such that exhaustion would not serve as a delay.  <u>Nielson</u>, 2002 WL 417402, at *5.  In accordance with the policies underlying the tribal exhaustion doctrine, the tribal court should  be given the first opportunity to address the factual and legal issues presented.  Exhaustion is "especially appropriate" to protect the operation of tribal government and avoid undermining the authority of the tribal court.  See <u>Bruce H. Lien Co. Three Affiliated Tribes</u>, 93 F.3d 1412, 1420 (8th Cir. 1996).

### III.    CONCLUSION

For the reasons set forth above, Defendants Ken Davis's and Jeremy Laducer's motion to dismiss (Docket No. 19) is **GRANTED** without prejudice.  The parties are required to exhaust tribal court remedies before the federal district court will become involved in the dispute.

**IT IS SO ORDERED.**

Dated this 22nd day of December, 2009.

> */s/ Daniel L. Hovland*
> Daniel L. Hovland, District Judge
> United States District Court